*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-008

MAY TERM, 2016

| | |
|---|---|
| In re R.S. and C.S., Juveniles | } APPEALED FROM: |
| | } |
| | } Superior Court, Windham Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 54/55-4-14 Wmjv |

Trial Judge: Katherine A. Hayes

In the above-entitled cause, the Clerk will enter:

Mother appeals an order of the superior court, family division, terminating her parental rights with respect to her children R.S. and C.S., born in August 2009 and June 2008, respectively.[*] We affirm.

Mother does not challenge any of the family court's findings, which reveal the following facts. Mother moved from New Hampshire to Vermont in August 2013 seeking specialized services for R.S., who has special needs. She was able to arrange housing for herself and the children at a shelter, as well as childcare and therapy for the children through recommended services. In the spring of 2014, a social worker from the Department for Children and Families (DCF) investigated complaints about mother's alleged abuse of R.S. One of the childcare providers at R.S.'s daycare had observed multiple bruises and scratches on R.S.'s body. Based on these injuries and subsequent interviews, police took the children into protective custody, and DCF sought emergency custody. The family court issued an emergency care order as to R.S. and a conditional custody order as to C.S. Following a temporary care hearing, the court ordered both children placed in DCF custody. Medical examinations of the children revealed multiple bruises on both children. C.S. had a severe rash in her genital area that could leave her with permanent scarring, and she was diagnosed with a urinary tract infection, encopresis, and enuresis. Both children also needed extensive dental work. C.S. needed thirteen fillings, and R.S. had to be brought to a specialized dentist for tooth extractions.

In August 2014, the parties stipulated that the children were in need of care or supervision (CHINS) based on the police affidavit in support of the CHINS petition, which documented observations concerning R.S.'s injuries. The parties also agreed that evidence could be presented at the disposition hearing concerning mother's possible chronic neglect of the children.

---

[*] The family court also terminated the parental rights of the children's father, who did not appear or participate in these proceedings and has no connection or relationship with the children.

A disposition hearing was held in October 2014. The parties agreed to a disposition case plan that called for continued DCF custody and parent-child contact two days a week for one hour. At that time, R.S. was placed in a residential treatment home to deal with his significant needs, while C.S. was placed in a foster home. The plan of services called for mother, among other things, to demonstrate safe and appropriate parenting, attend all visits, fully engage in services provided to her, participate in mental health intake, follow recommendations for therapy and treatment, participate in and complete parenting classes, demonstrate that she had benefitted from the parenting classes, maintain safe housing, and participate in a diagnostic evaluation. The case plan set concurrent goals of reunification with mother or adoption.

Mother's diagnostic evaluation, which consisted of several assessments and tests, indicated that mother had a relatively high risk of engaging in child abuse due in part to rapid mood swings and poor anger control. Mother also likely suffered from chronic depression due in part to suffering from multiple sclerosis, which was diagnosed in 2013. She also may suffer from attention deficit disorder and a personality disorder. Her therapist recommended her for Dialectical Behavioral Therapy, but she was unable to complete the therapy.

In April 2015, DCF filed a petition to terminate mother's parental rights. A hearing was held over two days in the fall of 2015. Following the hearing, the court issued an order terminating mother's parental rights. Based upon its lengthy findings, the court concluded that the State had demonstrated "unequivocally" that mother's capacity to care for the children had not improved significantly and that she would be unable to resume her parental duties within a reasonable period of time from the children's perspective. While acknowledging that mother had met some of the goals of the case plan, the court found that she had failed to fully engage with service providers and at times was openly hostile to them; had failed to maintain safe and stable housing that would even allow home visits; had not made any progress in addressing her mental health issues; had failed to demonstrate safe and appropriate parenting; had not demonstrated an ability to empathize effectively with her children or recognize their significant needs; had no insight at all into how her behavior negatively impacted the children or how to set appropriate limits that would keep them safe and healthy; and had interfered with R.S.'s healthcare and tried to prevent him from receiving medications aimed at improving his health.

The court found that mother and the children loved one another and were bonded with each other, but concluded that mother did not play a constructive role in the children's lives and that her involvement in their lives would be an obstacle to their continued emotional and psychological development. The court concluded that mother had a direct negative effect on R.S., who had suffered significant developmental trauma and needed long-term treatment. It further concluded that C.S. was in dire need of permanency and that her significant developmental gains since she had been placed in state custody would be jeopardized if mother's parental rights were not terminated. Accordingly, the court determined that there had been a substantial change in material circumstances warranting a modification of its earlier disposition order and that all four statutory best-interest factors strongly supported terminating mother's parental rights. See In re D.S., 2014 VT 38, ¶ 22, 196 Vt. 325 (stating that court must consider statutory best-interest factors set forth in 33 V.S.A. § 5114); In re R.W., 2011 VT 124, ¶ 14, 191 Vt. 108 (discussing required threshold showing of changed circumstances).

Mother does not challenge any of the court's findings or conclusions, but rather argues for the first time on appeal that the family court improperly allowed the State to relitigate the allegations of her physical abuse of the children and improperly made findings concerning the alleged abuse that were not supported by competent evidence. According to mother, because the

parties at the merits hearing stipulated to facts in the affidavit supporting the CHINS petition that did not itself establish the origin of the children's injuries, and because the State did not appeal from the CHINS determination, the State was precluded from establishing the origin of the physical abuse at the termination hearing. She also argues that the evidence presented at the termination hearing indicating that she had physically abused the children was solely hearsay and thus could not support the termination order.

We need not address mother's specific challenges to the trial court's admission of evidence concerning the underlying allegations of abuse in this case because the family court did not base its termination order to any significant degree on its findings concerning mother's physical abuse of the children. The merits stipulation established that these children were in need of care or supervision. Mother does not challenge that determination. The questions before the court in the termination proceeding were whether mother's progress toward reunification had stagnated, and whether termination was in the children's best interests. In its lengthy discussion of how the statutory best-interest factors applied in this case, the court mentioned physical abuse in only one sentence, stating the R.S. was much healthier than when he came into state custody and no longer needed to fear physical abuse or neglect. As indicated above, the court's basis for its termination order was that mother had not played a constructive role in the children's lives— in fact her continued involvement in their lives impeded their emotional and psychological development—and there is no likelihood that she will be able to parent the children safely within a reasonable period of time from their perspective. These conclusions were based on extensive findings concerning mother's progress in meeting the case plan goals and her conduct during visits with the children. Mother does not challenge these findings and conclusions, which are supported by clear and convincing evidence and, in turn, support the termination order.

Affirmed.


BY THE COURT:


_____
Marilyn S. Skoglund, Associate Justice


_____
Beth Robinson, Associate Justice


_____
Harold E. Eaton, Jr., Associate Justice


3